RJB:CSK

**M-10-1131**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

CECILIA CHANG,

              Defendant.

- - - - - - - - - - - - - - - -X

<u>To Be Filed Under Seal</u>

AFFIDAVIT IN
SUPPORT OF
APPLICATION FOR
<u>ARREST WARRANT</u>

(18 U.S.C. §§666(a)(1)(B) and 1589)

EASTERN DISTRICT OF NEW YORK, SS:

    KENNETH HOSEY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

    Upon information and belief, there is probable cause to believe that from in or about and between September 2007 and September 2010, within the Eastern District of New York and elsewhere, the defendant CECILIA CHANG, being an agent of an organization, to wit, St. John's University ("St. John's"), that received in excess of $10,000 in any one year period under a Federal program involving a grant, subsidy or other form of Federal assistance, did knowingly, intentionally and corruptly solicit, demand, accept and agree to accept something of value from other persons, to wit, the labor of St. John's students to whom she awarded or continued scholarships, with the intent to be influenced and rewarded in connection with business and a series

of transactions of such organization involving $5,000 or more, to wit: the awarding of St. John's scholarships.

(Title 18, United States Code, Sections 666(a)(1)(B) and 3551 et seq.)

Upon information and belief, there is probable cause to believe that from in or about and between September 2007 and September 2010, within the Eastern District of New York and elsewhere, the defendant CECILIA CHANG, did knowingly and intentionally obtain the labor and services of one or more persons (a) by means of threats of serious harm to that person or another person, (b) by means of a scheme, plan, or pattern intended to cause that person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm, and (c) by a combination of such means.

(Title 18, United States Code, Section 1589 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for 15 years. During my employment with the FBI, I have been assigned to a squad that investigates public integrity and other white collar crimes, including offenses involving wire, bank and mail fraud, bribery and money laundering. I am the FBI case agent assigned to this investigation. This affidavit is based on information that I have obtained through my personal participation in the investigation of the activities of the defendant.

2. The facts set forth in this affidavit are based upon my investigation, review of documents, and interviews of witnesses, including interviews of employees and students of St. John's, and upon what I have learned from other agencies, including the Internal Revenue Service ("IRS").

I. St. John's University and the Defendant

3. St. John's is a fully accredited undergraduate and graduate university with its main campus in Queens, New York.

4. In or about and between 1982 and 2010, the defendant CECILIA CHANG was the Dean of the St. John's Center of Asian Studies. In or about and between 1992 and 2010, the

---

[1] Because the purpose of this Affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not set forth all of the facts and circumstances of which I am aware.

3

defendant CECILIA CHANG was also the Vice President for International Relations at St. John's.

5. By speaking with representatives of St. John's and reviewing St. John's records I have learned the following. The defendant CECILIA CHANG, in her position as Dean of St. John's Center of Asian Studies and Vice President for International Relations at St. John's, had the authority to grant up to fifteen students each year discretionary scholarships to attend St. John's in pursuit of a degree. Many of the students to whom CHANG awarded these discretionary scholarships came from overseas. Chang notified the students by letter that, in exchange for the scholarship, they were "expected to perform duties assigned by the Vice President for International Relations and Dean of the Center of Asian Studies [CHANG] for a period of twenty hours per week." CHANG also notified the students by letter that their "grant may be terminated at any time by the Dean [CHANG] if the recipient fails to perform his or her work duties."

6. According to St. John's General Counsel, the University believed that the students who received the scholarships would be conducting work related to the St. John's Asian Studies Program.

7. Under the St. John's professional conduct and conflict of interest policy, it was impermissible for a St. John's employee to condition the receipt of a scholarship upon a student doing personal work for an employee. Such behavior, if

4

discovered, would result in disciplinary action against the employee.

8. For each year from 2005 to 2010, St. John's received millions of dollars in federal funds. Each discretionary scholarship that the defendant CECILIA CHANG awarded provided the student who received it with scholarship assistance in excess of $5,000 per semester.

II. CHANG's Solicitation and Acceptance of Student Labor in Exchange for Scholarships

9. As shown below, I have learned from students and staff members of St. John's that the defendant CECILIA CHANG demanded that students perform personal services for her and others, including cooking, cleaning and washing clothes at CHANG's home; chauffeuring CHANG and CHANG's son and others; answering CHANG's personal emails; and conducting personal financial transactions for CHANG. CHANG threatened the students and placed them in fear that if they refused to perform these personal services they would lose their scholarships and be unable to attend St. John's.

10. I have spoken with four confidential informants, who are or were scholarship students or staff members at St. John's. I will refer to them as CI1, CI2, CI3, and CI4, respectively.

11. CI1 told me the following. In 2007, the defendant CECILIA CHANG awarded a St John's scholarship to CI1. In late 2007, CI1 was assigned to work as a driver. CHANG required CI1 and two other scholarship students to create a schedule by which

5

CHANG and CHANG's son would have a driver available to them seven days a week. On the mornings CI1 was scheduled to work, CI1 either reported to CHANG'S office at St. John's or directly to CHANG's residence. CI1 received his/her daily assignments from CHANG, CHANG's son or CI4. Most of CI1's assignments related to CHANG's personal business. CI1 drove Chang to the hair salon, to restaurants, and to the airport. CI1 once had to drive Chang's son to the airport at 3:00 a.m. As a driver, CI1 was also responsible for taking out the garbage and shoveling snow at CHANG's residence in Queens, New York. CI1 indicated that Chang and her son were difficult to work for, stating they "were not good people." CI1 believed CHANG would withdraw CI1's scholarship if CI1 did not do what CHANG wanted. CI1 also witnessed other students working as housekeepers for CHANG. The student housekeepers cooked, cleaned and did laundry at CHANG'S house.

12. CI2 told me the following. In 2007, the defendant CECILIA CHANG awarded a St. John's scholarship to CI2. CHANG originally assigned CI2 to work as a tutor for the two young children of a personal associate of CHANG's. CI2 is unaware of CHANG's associate, or the children, having any affiliation with St. John's. CI2 tutored the children for approximately one week. CI2 was later assigned to work in CHANG's office where CI2 was responsible for opening emails, translating the emails to and from Chinese, and answering the telephone. CI2 stated that the work at CHANG's office related to CHANG's personal

affairs, indicating the emails were to and from CHANG's friends.

13. The defendant CECILIA CHANG also directed CI2 to work at CHANG's house after CI2 completed his/her assignments at CHANG's office. At CHANG's house, CI2 had to wash dishes and take care of the nephew of another one of CHANG's associates who had no affiliation with St. John's. CI2's responsibilities included warming food for the nephew to eat. CI2 learned from CHANG that the food for the nephew was prepared by another St. John's student. Since CI2 did not know how to cook or clean, CHANG directed yet another St. John's scholarship student, who also worked at CHANG's house, to train CI2. By late 2008 or early 2009, CI2 was working as a housekeeper at CHANG's house two days per week. CI2 cooked, cleaned, washed clothes, and shopped for food for CHANG. Two other student workers performed those duties the remaining five days of the week.

14. According to CI2, he/she had to perform the duties assigned to him/her by CHANG, even though CI2 did not want to, because CI2 feared losing his/her scholarship at St. John's. CHANG would often tell CI2 that she [CHANG] was the "boss." CHANG told CI2 on a number of occasions that CI2 should not tell anyone that CI2 was working for CHANG as a housekeeper.

15. At some point, CI2 developed a medical condition and told the defendant CECILIA CHANG that he/she could no longer work as a housekeeper. CHANG told CI2 that CI2 would have to continue to work as a housekeeper unless CHANG could find another student to replace CI2. Ultimately, another scholarship student

7

took over CI2's duties at the house. During the months that followed, CHANG instructed CI2 to run errands for CHANG that included answering CHANG's telephone and accompanying an older male to a function unrelated to St. John's.

16. The defendant CECILIA CHANG later instructed CI2 to return to his/her housekeeping duties at CHANG's house. CI2 had to, among other duties, cook for CHANG's son and the son's girlfriend. During this period, CHANG's son treated CI2 badly, often yelling and cursing at CI2, calling CI2 stupid and complaining about the food.

17. In or about January 2010, the St. John's office of the defendant CECILIA CHANG was searched by University officials and CHANG was suspended. After the search, CHANG told CI2 that she (CHANG) was being investigated by the FBI.[2] CHANG told CI2 to be careful, which CI2 understood to be a reference to CHANG's prior instruction to CI2 not to tell anyone that CI2 worked as a housekeeper for CHANG. After CHANG was suspended, CHANG instructed another student to bring a personal computer to her office. CI2 used the computer provided by the other student to answer personal emails and run personal errands for CHANG. Many of the emails CI2 sent for CHANG related to CHANG's son, Steven, trying to get a job.

18. CI3 told me the following. In 2008, the defendant CECILIA CHANG awarded a St. John's scholarship to CI3. CHANG assigned CI3 to work in CHANG's office. At the direction of

---

[2]   Another FBI Agent and I interviewed CHANG in December 2009.

8

CHANG, CI3 provided assignments and instructions to other student workers. CHANG often called CI3 to arrange for a driver. CI3 indicated that there was a calendar posted in CHANG's office that indicated which driver was assigned to work for CHANG each day. CI3 contacted the appropriate driver and gave the driver CHANG's instructions.

19. I have reviewed documents that corroborate CI3's statements, including calendars, similar to those described above, which indicate the name of the student driver assigned to work for the defendant CECILIA CHANG on a given day. I have reviewed an email written by CI3, at CHANG's direction, and sent from CHANG's St. John's email account. In the email, CI3 advised CHANG's son that CI2, the son's regular student housekeeper, would not be able to work at CHANG's home for the next few days. CI3 indicated that another student worker would fill in for CI2, and that because the replacement student had a class which ended at 1:30 p.m., that student would not be able to prepare lunch for CHANG's son until after that time. The email concluded by providing CHANG's son with the replacement student's cellular telephone number and schedule. CI3 wrote his/her name at the bottom of the email.

20. CI3 also conducted personal banking transactions for the defendant CECILIA CHANG while working in CHANG's office. According to CI3, CHANG controlled a number of financial accounts in the United States and overseas. The accounts included checking accounts and securities accounts. Some of the accounts

9

were in the names of individuals other than CHANG. Account numbers and passwords relating to these accounts were maintained at CHANG's office. CI3 also conducted financial transactions for CHANG outside the office, including cashing checks for CHANG. On several occasions, CHANG instructed CI3 to deliver the cash, obtained from the checks, to one of CHANG's drivers or an associate of CHANG's. On certain occasions, CHANG indicated that the cash was to be delivered to CHANG at Foxwoods Casino. On another occasion, CHANG provided CI3 with a check and instructed CI3 to open an account in CI3's name. Sometime later, CHANG instructed CI3 to withdraw the money from the account and provide the cash to one of CHANG's drivers who was, in turn, instructed to deliver the cash to CHANG at Foxwoods. CHANG later directed CI3 to close the account. CI3 followed CHANG's instructions.

21. I have reviewed various bank records, obtained via subpoena, including records of one of the defendant CECILIA CHANG's checking accounts. During my review, I observed multiple checks written to "Cash." The endorsements and other information on the checks indicate that they were cashed by St. John's students, including CI3. I have also obtained and reviewed financial records from Foxwoods Casino relating to CHANG. On multiple occasions, the amounts of the checks written to "Cash" from CHANG's account, and endorsed by the St. John's students, are identical to the amounts of cash provided by CHANG to the casino as a wager. In addition, many of the checks written to

"Cash" were for amounts just below the $10,000 federal reporting limit.

22. CI3 personally witnessed many other student workers with scholarships doing personal work for CHANG such as the types of work mentioned above. CI3 also heard other student workers complain about the work CHANG assigned to them. According to CI3, these students informed CI3 that they performed the work because they did not want to lose their scholarships.

23. CI4, who is an employee of St. John's, told me the following. According to CI4, the student workers received CHANG's orders orally and in writing. CI4 heard the defendant CECILIA CHANG verbally mistreat the students. According to CI4, and an email I reviewed,[3] the students who worked as drivers for CHANG were instructed to return the car keys to a particular student housekeeper, even if the housekeeper needed to be called to return to CHANG's house to receive the keys. Based upon personal observations, conversations with the students, and conversations with CHANG, CI4 knew that students did housekeeping at CHANG's house, chauffeured CHANG and her son, and did personal errands for CHANG.

24. I have learned that the defendant CECILIA CHANG also directed CI3 and other scholarship students to assist CHANG

---

[3] I have reviewed examples of the written orders from CHANG that were transmitted, via email, to the students. For example, one message included instructions to the drivers about the number of days per week CHANG wanted each of them to work. Another email indicated that CHANG did not want her house keys left outside of her home.

11

in defrauding St. John's. As part of the scheme, CHANG provided the students with a bogus list of dates, vendors and expenses. At CHANG's direction, the students pasted the bogus information onto authentic credit card statements from CHANG's account. Copies of the altered statements were then returned to CHANG, who had CI4 submit them to St. John's in support of vouchers requesting reimbursement for the expenses.[4]

25. After the January 2010 search of CHANG's office by St. John's officials,[5] CHANG contacted CI3. CHANG asked CI3 to meet her at a restaurant in Queens. At the restaurant, CHANG told CI3 not to tell anyone about the altered credit card statements. CI3 told me that CI3 participated in altering the credit card statements at the direction of CHANG because CI3 did not want to lose his/her scholarship.

26. Finally, I have read an email sent to the General Counsel of St. John's by a student to whom the defendant CECILIA CHANG awarded a scholarship. The email was sent in August 2010 after St. John's terminated CHANG's employment with the University. In the email the student stated:

> [CHANG] let me be the housekeeper for her house and give me the scholarship. We have three housekeeper before, and she ask us

---

[4] On September 14, 2010, the Office of the Queens County District Attorney charged CHANG, under a 205-count indictment, with, among other things, Grand Larceny in the First Degree for embezzling over $1 million from St. John's.

[5] During the search, St. John's found both original and altered versions of the credit card statements. During a subsequent review of these materials, handwritten instructions as to how to alter the documents were also found.

> work 122 days per year per person... Also she is my sponsor and now I know that situation has changed so I was worry about if I can continue get the scholarship or not. If I cannot get scholarship anymore, I may cannot continue study in SJU. So if please could you help me let me know what I can do and what will happen on that?

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant CECILIA CHANG so that she may be dealt with according to law.

Because of the nature of this application, it is further requested that this application and the related arrest warrant be filed under seal.

_____
KENNETH F. HOSEY
Special Agent
Federal Bureau of Investigation

Sworn to before me this
29th day of September, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

13